701 A.2d 920

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. ANTHONY CALIGUIRI, DEFENDANT–
RESPONDENT.

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
RAMON MUNOS, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 9, 1997—Decided October 6, 1997.

Before Judges DREIER, KEEFE and PAUL G. LEVY.

*John N. Shaughnessy*, Assistant Prosecutor argued the cause for appellant (*Robert W. Gluck*, Middlesex County Prosecutor, attorney; *Mr. Shaughnessy*, on the brief).

*Cecelia Urban*, Assistant Deputy Public Defender argued the cause for respondents (*Susan L. Reisner*, Public Defender, attorney; *Ms. Urban*, on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

In these otherwise unrelated cases, the State of New Jersey appeals from two decisions of the Law Division granting the appeals of each defendant from a decision of the Middlesex County Prosecutor denying the admission of each defendant into the Pretrial Intervention Program. The orders did not direct defendants' admission into the program, because, as we were informed at oral argument, they cannot be admitted into the program until individual rehabilitatory orders are entered after consideration by the appropriate program officials. We have interpreted the judge's orders as directing admission into the program subject to such individual processing. Because the issues presented in both cases require a common analysis, we have consolidated these appeals for the purpose of this opinion.

### State v. Caliguiri

Defendant Caliguiri was charged with possession of marijuana over fifty grams, *N.J.S.A.* 2C:35–10a(3), possession of the marijuana with intent to distribute, *N.J.S.A.* 2C:35–5a(1) and –5b(11), and

possession of the marijuana with intent to distribute within 1,000 feet of school property, *N.J.S.A.* 2C:35–7.

The police approached Caliguiri in South River at 1:58 a.m. because his car radio was too loud for the time of night. While speaking with the defendant, the officer noticed rolling papers on the driver's side door and loose marijuana on the seat. He then patted-down defendant and recovered a bag of marijuana from his right front pocket. A search of the vehicle revealed another bag of marijuana behind the driver's seat. Defendant then told the officer that a third bag could be found under a carpet in the left rear corner of the trunk. This stop occurred within 1,000 feet of a school. When taken to headquarters, Caliguiri told the officer that the large zip-loc bag found in his trunk contained one and a half ounces of marijuana, and he volunteered the name of the person from whom he had purchased the bag for $150 and where it was purchased. He told the police he was not a distributor of CDS and, according to the police report "most of the marijuana was for personal consumption. However, Mr. Caliguiri ... did state he would distribute marijuana only to close friends." There was no mention of any sale of marijuana to any person.

Caliguiri was rejected for the Pretrial Intervention Program on the basis that the "offense is too serious for Pretrial Intervention." This appears to be a categorical rejection. The assistant prosecutor incorporated within this final rejection the report of the PTI program director who had noted that the offense carries a presumption of incarceration and that "the seriousness of the offense is weighed heavily." We note that Caliguiri had no juvenile or criminal record, had never been arrested, was a high school graduate living at home with his parents and was gainfully employed, and had apparently cooperated with the police both by pointing out where additional marijuana had been hidden in his car and by revealing the name and location of his supplier.

We are governed in this case by a long series of Supreme Court decisions defining the Judiciary's role in reviewing a prosecutor's decision denying a defendant's admission into a Pretrial Interven-

tion Program. Some, including the most recent Supreme Court expression concerning PTI, expressly deal with the specific objection raised by the defendants in both of these cases, namely that they have been excluded from the program solely by virtue of the crimes with which they are charged, irrespective of the merits of their individual situations. *See State v. Baynes*, 148 *N.J.* 434, 690 *A.*2d 594 (1997); *see also State v. Wallace*, 146 *N.J.* 576, 684 *A.*2d 1355 (1996); *State v. Nwobu*, 139 *N.J.* 236, 652 *A.*2d 1209 (1995); *State v. Bender*, 80 *N.J.* 84, 402 *A.*2d 217 (1979); *State v. Leonardis*, 73 *N.J.* 360, 375 *A.*2d 607 (1977) (*Leonardis II*) and *State v. Leonardis*, 71 *N.J.* 85, 363 *A.*2d 321 (1976) (*Leonardis I*). These decisions and others were discussed in detail in *State v. Baynes* and provide the foundation for judicial review of prosecutorial discretion in this area.

As noted in *Baynes*, there is no question that *Nwobu, Bender, Wallace*, and both *Leonardis* cases require us to accord great deference to a prosecutor's decision to deny PTI to a particular defendant. *See Baynes*, 148 *N.J.* at 443–44, 690 *A.*2d 594. We examine the cases before us with this principle clearly in mind. Further, we recognize that the Supreme Court has stated that prosecutors may "base their rejections solely on the nature of an offense for which the Guidelines express a presumption against admission." 148 *N.J.* at 447, 690 *A.*2d 594.

In *Baynes*, which was a case of possession of CDS within 1,000 feet of school property, but without a charge of an intent to distribute, the Supreme Court noted that the offense was not one for which there was a presumption of rejection under the Court's published Guidelines for Operation of Pretrial Intervention. The crime of which defendant Caliguiri was charged, third-degree possession of CDS in a school zone with intent to distribute, has a mandatory term of imprisonment, and thus is, in the words of the *Baynes* Court, an offense "similar to that for second-degree offenses for which admission to PTI is presumptively unavailable." 148 *N.J.* at 449, 690 *A.*2d 594. But even though PTI is presumptively unavailable, there still must be individual analysis, since the

Guidelines do not provide even here for categorical rejection. As the Court stated in *Baynes*, " 'PTI decisions are "primarily individualistic in nature" and a prosecutor must consider an individual defendant's features that bear on his or her amenability to rehabilitation.' " 148 *N.J.* at 442, 690 *A.*2d 594 (quoting from *State v. Nwobu, supra,* 139 *N.J.* at 255, 652 *A.*2d 1209 and *State v. Sutton,* 80 *N.J.* 110, 119, 402 *A.*2d 230 (1979)).

In neither of the cases before us did the program director or prosecutor set forth any analysis of the factors that are required to be considered, other than the category of offense. The State has argued on appeal that the mere recitation that "all factors were considered" is sufficient to satisfy the requirement of individual application. We reject this interpretation. The Supreme Court reiterated in *Baynes* that there must be an analysis of its eleven factors under Guideline 3 which supplement the seventeen statutory factors for referral to the program. *N.J.S.A.* 2C:43–12e(1) to (f). Nowhere is there any indication that the prosecutor had considered any, much less each of the Guideline and statutory factors to determine the amenability of Caliguiri to PTI.

Guideline 3(i) provides "four situations where the application should generally be rejected." Added thereto are defendants "charged with a first or second degree offense or sale or dispensing of Schedule I or II narcotic drugs as defined in *L.* 1970, *c.* 226 (N.J.S.A. 24:21–1 *et seq.*) by persons not drug dependent." (Defendant Caliguiri was indicted for third-degree, not second-degree crimes). But as Guideline 3(i) makes clear, even defendants charged with higher degree offenses may still be considered for PTI although they "should ordinarily not be considered for enrollment in a PTI program except on joint application by the defendant and the prosecutor."

Although Caliguiri was charged with possession with intent to distribute marijuana, there was no claim that he actually sold or dispensed such CDS. His offense was, at best, in a grey area. Because the Supreme Court has in *Baynes* equated the possession

with intent to distribute with actual distribution of drugs where the offense occurs within 1,000 feet of school property, PTI may be found to be "presumptively unavailable" based on the charge. 148 *N.J.* at 449, 690 *A.*2d 594. Defendant Caliguiri, however, may attempt to rebut this presumption. He notes, for instance, he has an absolutely clean record, a job, good family support, and in fact, satisfied all of the applicable criteria of the statute and Guidelines with the exception of the nature of the offense. As to the offense, there is no claim that Caliguiri was a schoolyard seller of marijuana, or even that he held the marijuana for sale. Rather, there is a single statement in the arresting officer's report that he "would distribute marijuana only to close friends." His cooperation noted earlier, was demonstrated by his showing the arresting officer where additional marijuana was hidden under the carpeting in the trunk of his car, and he further volunteered to the officer the name of his supplier and the area where the drug was secured. (There is no indication in the police report whether the officer requested that Caliguiri then aid the police in locating the supplier).

Neither the program director's nor the prosecutor's decisions indicate what factors were relied upon to determine that defendant Caliguiri's individual analysis caused the prosecutor to find that the presumption against PTI for the offense had not been rebutted. As such, there was insufficient information before the Law Division judge for him to determine whether the prosecutor's decision to reject Caliguiri's application should be overturned.

We therefore remand this matter to the Middlesex County Prosecutor for consideration. The prosecutor should analyze the Guidelines and statutory factors in light of the Supreme Court's interpretation in *State v. Baynes* so that, if the decision is adverse to Caliguiri, the Law Division can appraise the prosecutor's actions.

### State v. Munos

█ The facts in the Munos appeal show that at 6:30 a.m. on Sunday morning November 27, 1994, Munos, with a passenger,

was driving east on Amboy Avenue in Edison when, as he alleges without contradiction, a vehicle travelling in the opposite direction swerved into his path. To avoid a collision, he pulled his car to the right and applied his brakes, but struck a utility pole.[1] He incurred injuries to his head and face, and his passenger suffered injuries to her teeth and a broken jaw. The investigating officer detected alcohol on defendant's breath and a blood sample was taken from him at the hospital at 7:50 a.m. which sample showed a .085 percent blood alcohol content. The police logged the report of the accident at 6:40 a.m. Assuming the accident was promptly reported, there had been an hour and ten minutes between the accident and the taking of the blood sample. The police used an extrapolation factor to determine defendant's blood alcohol content at the time of the accident. They applied a factor of .015% per hour, which the State acknowledges is only an average. We know, however, that if in fact defendant had only recently ingested the alcohol, the blood alcohol content may actually have been climbing between the time of the accident, and if the blood sample of the alcohol had been ingested earlier, the percentage would be declining. Defendant's size, weight and metabolism also could affect this adjustment. The State, however, used the adjustment as an absolute factor and found defendant to have an extrapolated blood alcohol content of .105% at the time of the accident. There were no other factors present.

An initial DWI charge against defendant was dropped because under *State v. Tischio*, 107 *N.J.* 504, 520, 527 *A.*2d 388 (1987), *appeal dismissed*, 484 *U.S.* 1038, 108 *S.Ct.* 768, 98 *L.Ed.*2d 855 (1988), extrapolation evidence may not be used to support a DWI conviction. The prosecutor, however, had defendant indicted for

---

[1] The original police report stated that defendant claimed that a car stopped suddenly in front of his, causing him to swerve to avoid hitting it. This is the only mention of a contrary version of the cause of the accident. The report noted, however, that there was a language problem affecting defendant being understood, as defendant did not speak English.

assault by auto based upon his alleged driving while intoxicated.[2] The prosecutor explained that where there is alcohol involved in a case such as this, no PTI intervention is to be afforded in Middlesex County.

> [D]iversion in cases such as this would only serve to undermine the joint efforts of this office and the sentencing courts in this County to create an atmosphere wherein it is always known that persons who drink to excess and injure others by driving their vehicles when they are under the influence of alcohol will face vigorous prosecution for their conduct. Any other result would be a disservice to the public interest.

The Program Director had stated that to "permit a PTI disposition in a case such as [this] is to convey a message that the Courts will tolerate drunk driving behavior at the expense of the safety to the community." It appears from the program director's decision and the prosecutor's agreement that the prosecutor had used a categorical rejection of defendant based on the offense, rather than one based upon the particular facts of this case. Munos had no juvenile or criminal record, there were no prior alcohol-related automobile offenses, and defendant's explanation of swerving to avoid a head-on collision stands unimpeached.

With regard to defendant Munos, the issue is easier than that involving Caliguiri. Our review of this record shows clearly that the prosecutor has based his rejection solely upon the category of offense, namely, an automobile accident in which the driver was found to have been under the influence. The prosecutor clearly failed to analyze the statutory and guideline factors of the offense and the offender. With regard to the accident itself, Munos apparently swerved to avoid an oncoming car, and there was no claim of speeding, weaving, horseplay or other reckless driving factors. Even the alcohol level required extrapolation evidence to place it barely over the legal limit. There is thus no aggravating factor of extreme intoxication. The crime charged, assault by auto, *N.J.S.A.* 2C:12–1c, is merely a fourth-degree crime if serious bodily injury results, and a disorderly persons offense if there is

---

[2] The prosecutor successfully contended that the extrapolation evidence may be used in such a criminal prosecution. We need not reach this issue.

only bodily injury. The crime, therefore, is well outside of the presumptive denial area of the Guidelines and statute.

Nor, with respect to defendant Munos, himself, is there any showing of a history of DWI offenses, any criminal or juvenile record, or any other factor which would impede his amenability to rehabilitation. If anything, Munos' case is even stronger than that presented to the Supreme Court in *State v. Baynes*. In *Baynes*, the prosecutor:

> could not, however, have considered all relevant factors, because the *per se* rule under which he made his decision had effectively denied Baynes's application from the moment Baynes was charged with possession of CDS in a school zone.
>
> By their nature, *per se* rules require prosecutors to disregard relevant factors, contrary to the guidelines, and when a defendant demonstrates that a prosecutor has relied on such a rule, the presumption that the prosecutor has considered all relevant facts is overcome.

[148 *N.J.* at 445, 690 *A.*2d 594].

The Court later stated:

> As a first-time offender charged with a non-violent, third-degree offense, Baynes is eligible for diversion into the PTI program. By abandoning his discretion in favor of a *per se* rule, the prosecutor made a decision unsupported by the legislative purpose behind both the PTI Statute and the Comprehensive Drug Reform Act, by the Guidelines, and by caselaw. Thus, the rejection of Baynes's PTI application was an abuse of discretion under two of the three categories of the *Bender* test.
>
> ... [T]he Legislature made all defendants initially eligible for PTI, and the *per se* rule effectively eliminates a whole category of defendants from consideration by the prosecutor.... Baynes's rejection, thus, was a patent and gross abuse of discretion. Accordingly, the trial court correctly ordered Baynes's admission into the program.

[148 *N.J.* at 451, 690 *A.*2d 594].

Were we to substitute Munos' name for that of Baynes and the assault by auto offense for the possession of CDS in a school zone, the quoted language could be written for Munos. There thus is no reason to remand this matter, as in the Caliguiri case, to the prosecutor for reconsideration. The trial judge correctly recognized that the denial of PTI in this case was a patent mistaken exercise of discretion.

The order in the case of defendant Caliguiri is modified to direct a remand of the matter to the Middlesex County Prosecutor for

reconsideration in accordance with this opinion. The similar order overturning defendant Munos' rejection for admission into the PTI program is affirmed. We do not retain jurisdiction.